# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ARNULFO CABRERA, *et al.,*
*individually and on behalf of all others*
*similarly situated*

    *Plaintiffs,*

    *v.*

TOBAR CONSTRUCTION, INC.,
*et al.,*

    *Defendants.*

Civil Action No. ELH-26-0072

## MEMORANDUM OPINION

Plaintiffs Arnulfo Cabrera, Elmer Callejas, and Yovani Gutierrez have filed suit against their employers, defendants Tobar Construction, Inc. ("Tobar") and DC Construction, Inc. ("DC Construction"), as well as CAM Construction Co., Inc. ("CAM"), the general contractor on the project on which plaintiffs worked as carpenters. ECF 1 ("Complaint"). Plaintiffs allege that defendants paid them "far less than the required straight-time and overtime wages" for their carpentry work on the Commodore John Rodgers Elementary and Middle School, a public school in Baltimore City, Maryland (the "Project"). *Id.* ¶ 6. Therefore, plaintiffs have lodged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count I); the Maryland Wage and Hour Law ("MWHL"), § 3-401 *et seq.* of the Labor and Employment Article ("L.E.") of the Maryland Code (2025 Repl. Vol.) (Count II); the Maryland Prevailing Wage Statute ("MPWS"), § 17-210 *et seq.* of the State Finance and Procurement Article ("S.F.P.") of the Maryland Code (2021 Repl. Vol.) (Count III); and the Maryland Wage Payment and Collection Law ("MWPCL"), L.E. § 3-501 *et seq.* (Count IV). ECF 1, ¶ 8.

Eight additional plaintiffs have joined the suit since its initial filing, pursuant to 29 U.S.C. § 216(b) and S.F.P. § 17-224(f). They are Jose Cabrera (ECF 1-2), Enier Aguirre (ECF 16),

1

Nahum Valladares (ECF 19), Elber Gonzalez (ECF 19), Junior Garcia (ECF 19), Elvin Gonzalez (ECF 21), Roy Marin Sandi (ECF 23), and Daniel Bonilla (ECF 27).

Now pending is plaintiffs' "Motion for Conditional Certification of Collective Action and Court-Approved Notice" (ECF 28), supported by a memorandum of law (ECF 28-1) (collectively, "Motion"), and exhibits.  The exhibits include the Declaration of Callejas (ECF 28-2, "Callejas Declaration"); the Declaration of Gutierrez (ECF 28-3, "Gutierrez Declaration"); the Project's Wage Determination Rates (ECF 28-4); the proposed Notice of Collective Action (ECF 28-5, "Notice"); and the proposed Consent to Join Collective Action (ECF 28-6, "Consent").

In the Motion, plaintiffs ask the Court to conditionally certify the case as a collective action, pursuant to 29 U.S.C. § 216(b) and S.F.P. § 17- 224(f).  Further, plaintiffs ask the Court to approve their proposed Notice (ECF 28-5) and Consent (ECF 28-6), to be provided to potential opt-in plaintiffs.  ECF 28-1 at 15.[1]  Plaintiffs also seek an order requiring Tobar and DC Construction to provide plaintiffs with the contact information of their employees who worked as carpenters on the Project and to post the Notice at their offices and at the Project.  *Id.*

Defendants have not filed an opposition to the Motion, and the time to do so has expired. *See* Docket.  Moreover, plaintiffs represent to the Court that "Defendants have indicated that they will not contest the notice, notice plan, or proposed order filed in connection with this Motion." ECF 28-1 at 3.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

---

[1] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on a particular submission.

### I. Factual Allegations[2]

Plaintiffs are carpenters who worked on the construction of the Commodore John Rodgers Elementary and Middle School in Baltimore, for which construction began in 2024.  ECF 1, ¶ 1. They are also former employees of Tobar and DC Construction (collectively, "Subcontractor Defendants").  *Id.* ¶¶ 12, 13, 14, 17, 20.  CAM served as the general contractor on the Project, and awarded DC Construction "a subcontract for concrete work."  *Id.* ¶ 32.  DC Construction then "entered into a second-tier subcontract with Tobar for a portion of the work."  *Id.* ¶ 33.  Plaintiffs "worked under these subcontracts."  *Id.* ¶ 34.

According to plaintiffs, Subcontractor Defendants "operate as a single integrated enterprise", "operate out of the same facility", and "share employees between them."  *Id.* ¶¶ 22, 23, 24.  Moreover, they allege: "Some Plaintiffs received paychecks from Tobar and others received paychecks from DC Construction, but they worked side by side."  *Id.* ¶ 35.  And, they assert: "The same foreman from Subcontractor Defendants supervised all Plaintiffs regardless of which entity issued the worker's paycheck."  *Id.*

According to plaintiffs, while they were working on the Project, they "spent nearly all of their time performing carpentry work."  *Id.* ¶ 36.  Their work duties included, *id.*:

- Using measuring tapes to measure wood and metal for precise cuts;
- Using circular saws to cut wood;
- Using other power saws to cut metal;
- Using laser levels to mark lines for concrete forms' layout and leveling, and to ensure that tall forms are kept straight and plumb;

---

[2] The factual allegations are drawn largely from the Complaint, declarations, and exhibits. In deciding motions for conditional certification under the FLSA, courts regularly rely on affidavits, declarations, and other evidence beyond mere allegations in the complaint to determine whether plaintiffs have alleged sufficient facts to justify proceeding as a collective action.  *See Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 605–06 (D. Md. 2020); *Williams v. Long*, 585 F. Supp. 2d 679, 684–85 (D. Md. 2008).

- Constructing forms for cement pours—while suspended by a harness if working on a multistory form—using materials including plywood, wooden two-by-fours, and metal plates; tools such as drills, hammers, and four-foot levels; and smaller materials such as nails and screws;
- Setting up machinery and equipment for concrete pours; and
- Carefully deconstructing forms for reuse following concrete pours, including through the use of prybars.

Plaintiffs explain that "Maryland's prevailing wage law requires contractors on state-financed public works projects like this one to pay workers the prevailing wage rate for each worker's job classification, with higher-skilled classifications like carpenter requiring a higher rate." *Id.* ¶ 2. According to plaintiffs, they were entitled to the "prevailing wage rate for a Carpenter in Baltimore City on the Project", which was "$33.21 per hour, plus $14.03 per hour in fringe benefits, totaling $47.24 per hour." *Id.* ¶ 37.[3]  But, plaintiffs complain that "for the vast majority of [their] hours worked," they received only "the 'common laborer' rate of $20.81 plus $6.39 in hourly fringe benefits, totaling $27.20 per hour." *Id.* ¶ 38.  This equates to "a difference of $20.04 per hour." *Id.* ¶ 4.

Moreover, plaintiffs assert that they "worked more than 40 hours per week on most of their workweeks on the Project." *Id.* ¶ 42.  But, they claim that, "[f]or the vast majority of [their] overtime hours, Subcontractor Defendants paid Plaintiffs 1.5 times the 'common laborer' rate rather than 1.5 times the Carpenter rate to which they were entitled." *Id.* ¶ 43.

---

[3] In the Motion, plaintiffs clarify, ECF 28-1 at 5 n.1: "The MPWS requires contractors on certain public works projects to pay workers both the 'prevailing' wage for their job classification and certain fringe benefits. Fringe benefits may be provided either in the form of permissible benefits or as an additional sum of money per hour in lieu of those benefits." (Citing S.F.P. § 17-208(d)) (stating the fringe benefit requirement); *id.* § 17-224(e) (allowing workers to sue to recover unpaid fringe benefits); Code of Maryland Regulations ("COMAR") 21.11.11.04(B) ("If the employer does not have a bona fide fringe benefit amount equal to or more than the prevailing wage bona fide fringe benefit amount, the employer shall pay the difference to the employee in basic wages.")).

When "Plaintiffs complained to Defendants about this 'wage theft,'" one unidentified plaintiff was fired "in retaliation." *Id.* ¶ 39.[4]  Plaintiffs were told by Juan Alvarez, a foreman for Subcontractor Defendants, that plaintiffs were not entitled to the carpenter rate because "only extremely complex tasks merit the carpenter rate." *Id.* ¶ 40.  Plaintiffs maintain that "[n]either Mr. Alvarez nor any other employee of Subcontractor Defendants tracked the time Plaintiffs spent performing different tasks during the workday.  Instead, Subcontractor Defendants paid Plaintiffs just a few carpenter-rate hours most weeks while paying most of their hours at the lower laborer rates." *Id.* ¶ 41.

Plaintiffs posit that a collective action is properly maintainable "because Plaintiffs and the Collective (i) are or were employees of Subcontractor Defendants during the statutory period; (ii) performed carpentry work on the Project; (iii) had similar duties and performed similar tasks in the Project; (iv) allege similar violations of the FLSA and Maryland Wage Laws in the form of unlawful compensation policies; and (v) seek the same remedies." *Id.* ¶ 51.

Therefore, plaintiffs seek conditional certification of a class, consisting of carpenters who also worked on the Project.  ECF 28-1 at 3.  They also contend that they have exceeded "their minimal evidentiary burden to show that they and their coworkers on the Project were similarly situated" as to defendants' unlawful policies.  *Id.*

In support of the Motion, plaintiffs Callejas and Gutierrez have submitted declarations asserting that they performed carpentry work, but were paid at the common laborer rate for both their hourly wage and overtime rates.  ECF 28-2; ECF 28-3.  They included with their declarations samples of their payroll records, reflecting the wages they earned from their work on the Project.

---

[4] Plaintiffs allege that as the Project's general contractor, CAM "is automatically jointly and severally liable under Maryland law for Subcontractor Defendants' wage theft."  ECF 1, ¶ 7.

Callejas's paystub shows that he worked 47 hours between July 13, 2025 through July 19, 2025. ECF 28-2 at 11–13. He was paid at the carpenter rate for only two of those hours. *Id.*; *see also* ECF 28-2 at 3, ¶ 11. Indeed, Callejas's paystub shows that from July 13, 2025 to July 19, 2025, he was paid at the base hourly rate of $30.00 for 38 hours of common laborer work and at the base hourly rate of $33.21 for 2 hours of carpentry work. ECF 28-2 at 12–13. And, the paystub indicates that Callejas was paid $45.00 for 7 hours of overtime work, which was calculated from the $30.00 base hourly rate for a common laborer. *Id.* at 12.

Similarly, Gutierrez's paystub shows that, for the week of April 13, 2025 to April 19, 2025, he worked 53 hours. ECF 28-3 at 7–8. But, he was paid for "32 hours at the common laborer rate and 13 hours at the common laborer overtime rate." ECF 28-3 at 3, ¶ 10. Gutierrez's paystub confirms he was paid at two different base rates: $27.00/hour for 32 hours of common laborer work and $33.21/hour for 8 hours of carpentry work. *Id.* at 7. His overtime—13 hours at $40.50/hour—was calculated at 1.5 times the common laborer rate of $27.00, and not at the higher carpentry rate. *Id.*

Additional facts are included, *infra.*

## II. Legal Standard[5]

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance

---

[5] In the Motion, plaintiffs analyze the collective action conditional certification process only under the FLSA. They assert: "The MPWS expressly provides for a comparable collective action process" to the FLSA. ECF 28-1 at 7 n.2 (citing S.F.P. § 17-224(f)). S.F.P. § 17-224(f) provides that "an action filed in accordance with this section may be brought by one or more employees on behalf of that employee or group of employees and on behalf of other employees similarly situated."

As noted, defendants do contest the Motion. Therefore, like plaintiffs, I shall use the FLSA and federal case law to guide my analysis as to the State claims.

of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (alteration in *Barrentine*); *see Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 214 (2016); *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 383 (4th Cir. 2025); *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1032 (4th Cir. 2020); *Morrison v. Cnty. of Fairfax, Va.*, 826 F.3d 758, 761 (4th Cir. 2016); *see also McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 240 (4th Cir. 2016) ("Congress enacted the FLSA to protect 'the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.'") (citations omitted).

In particular, "the FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a given week." *Encino Motorcars, LLC*, 579 U.S. at 211 (citation omitted); *see Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015); *Chavez-Deremer*, 147 F.4th at 384; *see also Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) ("The FLSA requires that employers pay employees the minimum hourly wage 'for all hours worked.'") (quoting *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011)). Moreover, the FLSA has established the "general rule that employers must compensate each employee 'at a rate not less than one and one-half times the regular rate' for all overtime hours that an employee works." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (quoting 29 U.S.C. § 207(a)(1)).

The FLSA is now "best understood as the minimum wage/maximum hour law." *Wai Man Tom*, 980 F.3d at 1032 (citing *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015)) (internal quotation marks omitted). As the Fourth Circuit said in *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1266-67 (4th Cir. 1996): "The two central themes of the FLSA

are its minimum wage and overtime requirements . . . . The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages." (Internal quotations and citations omitted); *see Wai Man Tom*, 980 F.3d at 1032.

Plaintiffs contend that Subcontractor Defendants' policies and practices of failing to pay plaintiffs the proper prevailing wage rate for carpenters have deprived plaintiffs of overtime pay and overtime gap-pay under Section 207(a)(1) of the FLSA.  The Fourth Circuit has found that the "regular rate" for overtime under the FLSA is the required prevailing basic hourly rate.  *Amaya v. Power Design, Inc.*, 833 F.3d 440, 447 (4th Cir. 2016).  And, "an overtime gap time" claim — "a species of overtime violation" in which an employee "has not been paid all the straight time she is owed" and therefore "has not been properly paid her overtime" — is "cognizable under the FLSA." *Conner v. Cleveland Cnty., N. Carolina,* 22 F.4th 412, 424 (4th Cir. 2022).

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762. 771 (D. Md. 2008); *see Matthews v. Bloomworks Wellness, LLC*, BAH-25-1305, 2026 WL 452368, at *5 (D. Md. Feb. 18, 2026).  Section 216(b) of 29 U.S.C. "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros*, 532 F. Supp. 2d at 771; *see Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 605 (D. Md. 2020); *see also Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 137 n.1 (4th Cir. 2018) ("A collective action under the [FLSA] differs from a class action under Federal Rule of Civil Procedure 23 because potential plaintiffs can join an FLSA collective action only by affirmatively giving consent in writing to become a party.").

Section 216(b) states, in pertinent part:

An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Pursuant to 29 U.S.C. § 216(b), "[d]eterminations of the appropriateness of conditional collective action certification and court-facilitated notice are left to the court's discretion." *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). Generally, when assessing whether to certify a collective action pursuant to the FLSA, district courts in this circuit adhere to a two-stage process. *See, e.g.*, *Lucero v. Horizon Land Mgmt., LLC*, JKB-25-0903, 2025 WL 3481782, at *2 (D. Md. Dec. 4, 2025); *Flores v. Unity Disposal & Recycling, LLC*, GJH-15-196, 2015 WL 1523018, at *2-3 (D. Md. Apr. 2, 2015); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012); *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007).

"In the first stage, commonly referred to as the notice stage, the court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate." *Butler*, 876 F. Supp. 2d at 566 (internal quotations omitted); *see Mazariegos v. Pan 4 Am., LLC*, DLB-20-2275, 2021 WL 5015751, at *2 (D. Md. Oct. 28, 2021) (collecting cases). This stage generally occurs before discovery, so the threshold for determining whether other plaintiffs are similarly situated is necessarily low. *Butler*, 876 F. Supp. 2d at 566 (citing *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006)); *Mazariegos*, 2021 WL 5015751, at *3 (citing *Lancaster v. FQSR*, TDC-19-2632, 2020 WL 5500227, at *2–3 (D. Md. Sept. 11, 2020)).

The second stage is sometimes referred to as the decertification stage. *Butler*, 876 F. Supp. 2d at 566. "In the second stage, following the conclusion of discovery, the court engages in a more

9

stringent inquiry to determine whether the plaintiff class is [in fact] similarly situated in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action." *Syrja*, 756 F. Supp. 2d at 686 (internal quotations and citations omitted) (alterations in *Syrja*).

Plaintiffs' Motion pertains only to the first step of conditional certification. *See generally* ECF 28. Therefore, the central question "is whether [plaintiffs] are similarly situated in a way that suggests they were victims of a common policy, scheme, or plan that violated the FLSA." *Desmond v. Alliance, Inc.*, CCB-14-3499, 2015 WL 2165115, at *3 (D. Md. May 7, 2015); *see Baylor*, 443 F. Supp. 3d at 605. So long as "the plaintiffs have offered enough evidence for the court to make such a determination, and if differences between individuals (whether with the same job or different job titles) do not make clear that a collective action would be unmanageable . . . a notice-stage certification is appropriate." *Desmond*, 2015 WL 2165115, at *3 (internal citations omitted); *cf. Syrja*, 756 F. Supp. 2d at 688 (denying conditional certification because "the adjudication of multiple claims . . . would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individualized factual inquiries").

At the first stage, to warrant conditional certification, plaintiffs need only show that the proposed members of the collective are "similarly situated" within the meaning of 29 U.S.C. § 216(b). *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (citations omitted). "'[S]imilarly situated' need not mean 'identical.'" *Bouthner v. Cleveland Const., Inc.*, RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012) (citation omitted); *see McCoy v. Transdev Servs., Inc.,* DKC-19-2137, 2020 WL 2319117, at *2 (D. Md. May 11, 2020). Moreover, at the stage of conditional certification for FLSA collective actions, plaintiffs generally must "only make a 'relatively modest factual showing'" as to the existence of a common policy, scheme, or

plan that violates the FLSA. *Butler*, 876 F. Supp. 2d at 566 (quoting *Marroquin*, 236 F.R.D. at 259).

"Because the court has minimal evidence [at this stage], this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Calderon v. Geico General Ins. Co.*, RWT-10-1958, 2011 WL 98197, at *4 (D. Md. Jan. 12, 2011) (quoting *Yeibyo v. E-Park of DC, Inc.*, DKC-07-1919, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008)) (second alteration in *Calderon*); *see, e.g., Craighead v. Full Citizenship of Md., Inc.*, PX-17-595, 2018 WL 925416, at *2 (D. Md. Feb. 16, 2018). Indeed, it is "important that the inquiry occur under a lenient standard to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer." *Lancaster*, 2020 WL 5500227, at *3. Therefore, courts do not "delve[] too deeply into the merits" at this step. *Essame v. SSC Laurel Operating Co.*, 847 F. Supp. 2d 821, 826 (D. Md. 2012).

However, plaintiffs must provide "more than vague allegations with meager factual support, but [they] need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 576 (D. Md. 2014) (citing *Mancia v. Mayflower Textile Services Co.*, CCB-08-0273, 2008 WL 4735344, at *2 (D. Md. Oct. 14, 2008)) (alteration in *Randolph* and internal quotations and citations omitted). And, "[f]actual disputes do not negate the appropriateness of court facilitated notice." *Camper*, 200 F.R.D. at 520 (citations omitted). To make the requisite showing, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Id.*

As noted, at the second stage, generally undertaken after discovery has concluded, a defendant may move for decertification. *Syrja*, 756 F. Supp. 2d at 686. Then, the court again considers whether the plaintiffs are actually similarly situated to warrant continuing the action collectively, but the inquiry at this second stage is "more stringent." *Rawls*, 244 F.R.D. at 300; *see also Syrja*, 756 F. Supp. 2d at 686.

### III. Discussion

As discussed, the standard for conditional certification of a collective action is a lenient one. Plaintiffs need not need show that the claims of all current and potential plaintiffs are identical. *Baylor,* 443 F. Supp. 3d at 605 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)). The Court need only determine that the plaintiffs and potential plaintiffs "were the victims of a common scheme, policy, or plan that violated the law." *Baylor*, 443 F. Supp. 3d at 607 (citing *Butler*, 876 F. Supp. 2d at 566). To that end, "[a]ll that is required at the initial certification stage is some evidence of 'a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions.'" *Mazariegos*, 2021 WL 5015751, at *3 (quoting *Blake v. Broadway Services, Inc.*, CCB-18-086, 2018 WL 4374915, at *3 (D. Md. Sept. 13, 2018)).

Plaintiffs have shown that they and other potential plaintiffs are similarly situated. Defendants have not asserted otherwise. Therefore, conditional certification is proper, and the Court has the discretion to facilitate notice to potential plaintiffs.

### A.  The Class

Plaintiffs seek the conditional certification of a class consisting of plaintiffs and "other carpenters who worked on the Project[.]" ECF 28-1 at 3.  In support of the Motion, two named plaintiffs, Callejas and Gutierrez, have submitted declarations.  *See* ECF 28-2; ECF 28-3.

In their declarations, Callejas and Gutierrez describe the carpentry work that they performed (ECF 28-2 at 2–3, ¶ 4; ECF 28-3 at 2–3, ¶ 4); attest that no one tracked the time that they and their coworkers spent performing different tasks (ECF 28-2 at 3, ¶ 7; ECF 28-3 at 3, ¶ 6); note that the same foremen from Tobar and DC Construction supervised all carpenters on the Project and required all construction employees to follow the same rules (ECF 28-2 at 4, ¶¶ 14, 16; ECF 28-3 at 4, ¶¶ 13, 15); and state that "all [carpenters] worked side-by-side and faced the same problem of not getting paid the carpenter rate." ECF 28-2 at 4, ¶ 15; ECF 28-3 at 4, ¶ 14.

Appended to the Callejas Declaration are photos from the Project (ECF 28-2 at 7–9) that, according to Callejas, "show[] the kind of work [he] and his coworkers did there." ECF 28-2 at 3, ¶ 6.  Callejas avers that the photos indicate that they "are building multi-story forms for concrete pours." *Id.*  He also provided his "Weekly Certified Payroll Reporting Form" (ECF 28-2 at 11–12) and paystub for the week of July 13, 2025 to July 19, 2025 (*id.* at 13).  Gutierrez's Declaration includes his paystub for the week of April 13, 2025 to April 19, 2025.  ECF 28-3 at 7–8.

Plaintiffs have also included as an exhibit to their Motion the Maryland Stadium Authority's prevailing wage rates for the Project.  ECF 28-4.  Of import, the basic hourly rate for a carpenter on the Project was $33.21, and the fringe benefit payment was $14.03, totaling $47.24 per hour.  *Id.* at 2.  In contrast, the basic hourly rate for a common laborer was $20.81, and the fringe benefit payment was $6.39, totaling $27.20 per hour.  *Id.* at 3.

Callejas and Gutierrez aver in their declarations that they were not paid the carpenter rate for all of their work or for their overtime pay.  ECF 28-2, at 3, ¶ 11; ECF 28-3, at 2, ¶ 10. As discussed, their paystubs reflect that their "time-and-a-half" overtime rates were derived from allegedly improper hourly rates, rather than the carpenter rates to which they assert that they were entitled.  *See* ECF 28-2 at 11–13; ECF 28-3 at 7–8.  And, according to both Callejas and Gutierrez, "many of [their] coworkers faced the same issue because [they] talked to them about their pay and saw their paystubs."  ECF 28-2 at 4, ¶ 12; ECF 28-3 at 2, ¶ 11.

Plaintiffs maintain that, in violation of the FLSA, Subcontractor Defendants unlawfully withheld overtime wages owed to plaintiffs for hours worked in excess of forty per week.  But, plaintiffs have provided more than just vague allegations, and have relied upon declarations and exhibits to make the required showing.  The declarations and the exhibits provide sufficient evidence to reasonably determine, at this stage, that plaintiffs were entitled to additional overtime pay and that the proposed potential class members were subjected to the same overtime-pay violations.  *See*, *e.g., Bobb v. FinePoints Priv. Duty Healthcare, LLC*, JKB-23-03129, 2024 WL 1299929, at *3 (D. Md. Mar. 27, 2024) (granting conditional certification where "the allegations, as supported by affidavit testimony, show that all proposed plaintiffs had similar responsibilities, were subject to similar oversight, and were subject to the same allegedly unlawful wage policies").

In my view, plaintiffs have made a sufficient showing that other potential plaintiffs are similarly situated so as to warrant a collective action.

### B.  The Notice and the Consent

"Once the Court has granted conditional certification of the FLSA collective, it then must approve of the notice by which plaintiffs will inform potential members of the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to

participate." *Tripp v. Perdue Foods, LLC*, JMC-24- 00987, 2024 WL 4770282, at *8 (D. Md. Nov. 13, 2024); *see Syrja*, 756 F. Supp. 2d at 686; *Camper*, 200 F.R.D. at 519.

In collective actions founded on the FLSA, "district courts must be able to supervise contacts between the parties and their respective counsel to ensure that potential plaintiffs are not misled about the consequences of joining a class in an ongoing employment dispute." *Degidio*, 880 F.3d at 144; *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (stating that in class actions "it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice"). Accordingly, "[t]he district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler*, 876 F. Supp. 2d at 574 (citations omitted).

"The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Id.* at 574-75 (alteration in original) (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)). "Nevertheless, this Court 'will not order more extensive notification than is necessary, to reach potential class members[,]' unless special circumstances exist." *Tripp*, 2024 WL 4770282, at *8 (alteration in *Tripp*) (quoting *Blake*, 2018 WL 4374915, at *5).

As discussed, plaintiffs have appended to their Motion a proposed Notice (ECF 28-5) and a proposed Consent (ECF 28-6). Each of these forms has been provided in English and Spanish. ECF 28-5; ECF 28-6. Plaintiffs have also provided certifications that these documents have been accurately translated into Spanish. ECF 28-5 at 10; ECF 28-6 at 4. Plaintiffs ask the Court to approve these documents for distribution to the potential members of the collective action. ECF 28-1 at 12.

Plaintiffs contend that they have "carefully structured the proposed Notice to provide timely and accurate information about the pending action, so that potential plaintiffs can make a well-informed decision about their participation." *Id.*  They explain that "the proposed Notice states the names of the parties and the nature of Plaintiffs' claims, clarifies that the question of liability has not been decided and that the results of the suit are not guaranteed, explains how to join the collective action, allows people a 60-day period to submit a signed Consent Form to Plaintiffs' counsel, and provides assurance that it is unlawful for employers to retaliate against those who participate." *Id.*

To accomplish effective distribution of the Notice, plaintiffs request an Order from the Court that requires defendants to: "(a) within ten business days of the date of the Order granting this Motion, provide Plaintiffs a computer-readable database of names, last-known mailing addresses, cell phone numbers and email addresses, and dates of employment for all current and former carpenters on the Commodore John Rodgers Elementary/Middle School Project since January 9, 2023; and (b) within ten business days of the date the Order, post English and Spanish copies of the Notice prominently at their offices and at the Project worksite. Plaintiffs will distribute the Notice via mail, email, and text message." ECF 28-1 at 12.  Further, plaintiffs seek a 60-day period for potential plaintiffs to opt in and to "text a reminder notice [to potential plaintiffs] approximately 30 days after the Notice is mailed." ECF 28-1 at 14.

Plaintiffs assert: "These basic components of the proposed notification plan reflect long-standing standard practice in FLSA litigation, as reaffirmed in previous orders from this District and other Districts within the Fourth Circuit." ECF 28-1 at 12 (citing *McCoy*, 2020 WL 2319117, at *5 (ordering production of "names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Collective

Members"); *Boyd v. SFS Commc'ns*, PJM-15-3068, 2017 WL 386539, at \*2 (D. Md. Jan. 27, 2017) (authorizing delivery of the opt-in notice by mail, email, telephone, and physical posting at worksites); *Mercado v. North Star Founds.*, WMN-10-3467, 2011 WL 1557887, at \*4 (D. Md. Apr. 21, 2011) (ordering defendant to produce a "list of the full name, last known residential address, residential and cell phone numbers, work address, work phone number, date of birth, and e-mail address of each and every individual who was employed by Defendant as a laborer or working foreman" to facilitate the dissemination of an FLSA collective action notice); *Montoya v. S.C.C.P. Painting Contractors*, CCB-07-455, 2008 WL 554114, at \*4 (D. Md. Feb. 26, 2008) (ordering defendant to "disseminate the plaintiffs' proposed notice . . . with employees' paychecks"); *Gonzalez-Rodriguez v. Gracia*, TWB-21-406, 2023 WL 2450170, at \*5 (E.D.N.C. Feb. 6, 2023) (ordering defendants "to provide the Notice in English and Spanish to current employees . . . with their paychecks")).

According to plaintiffs, disseminating the Notice through their requested methods "will be effective in reaching potential plaintiffs and informing them of their rights." ECF 28-1 at 13. Therefore, plaintiffs maintain that their "proposed notice plan is appropriate." *Id.* at 13–14 (citing *Li v. Escape Nails & Spa, LLC*, DKC-23-1487, 2024 WL 3742764, at \*2 (D. Md. Aug. 9, 2024) (permitting notice "via mail, email, and text message" and further providing that notice also be "posted in conspicuous locations at Escape Nails in all relevant languages throughout the opt-in period"); *Wilson,* 2024 WL 415349, at \*4 (permitting "notice by U.S. mail, email, text message, and postings at Defendants' locations for the 90-day notice period as requested"); *Biscardi v. Gov't Emps. Ins. Co.*, GJH-21-2240, 2023 WL 155238, at \*5 (D. Md. Jan. 11, 2023) (stating that "courts in the Fourth Circuit have frequently permitted FLSA notices to be distributed via text and email,

and the Court does not find a compelling reason why notice in this matter should be limited to traditional mail")).

Defendants do not object to either the Notice or the Consent. The Court approves plaintiffs' Notice of Collective Action (ECF 28-5) and Consent to Joint Collective Action (ECF 28-6). Further, the Court will permit notice by mail, email, text message, and postings at defendants' offices and the Project for the 60-day notice period, as requested. *See Biscardi,* 2023 WL 155238, at *5 ("[C]ourts in the Fourth Circuit have frequently permitted FLSA notices to be distributed via text and email [in addition to traditional mail.]" (citing *Thomas v. Maximus, Inc.*, DJN-21-498, 2022 WL 1482010, at *8 (E.D. Va. May 10, 2022)).[6]

Within twenty-one days of the date of docketing of the accompanying Order, defendants are directed to produce to plaintiffs a computer-readable database of names; last-known mailing addresses, phone numbers, and email addresses; and dates of employment for all individuals employed by Tobar or DC Construction as non-exempt, non-supervisory employees engaged in construction work as a carpenter or a laborer at the Commodore John Rodgers Elementary and Middle School, from January 9, 2023 to the present.

### IV. Conclusion

For the foregoing reasons, I shall grant the Motion.

An Order follows, consistent with this Memorandum Opinion.


Date: March 30, 2026                                                    /s/
                                                    Ellen L. Hollander
                                                    United States District Judge

---

[6] Courts in this district have approved opt-in periods exceeding 60 days. *See, e.g.*, *Butler*, 876 F. Supp. 2d at 575 (authorizing a 90-day opt-in period); *Knox v. Hooper's Crab House, Inc.*, CCB-17-1853, 2018 WL 723964, at *4 (D. Md. Feb. 6, 2018) (authorizing a 75-day opt-in period). Therefore, a 60-day opt in period is reasonable.